IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CARL ROBERT MCGUCKIN and GERI MCGUCKIN,**  Plaintiffs,   v.   **ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY,**  Defendants. | **CIVIL ACTION**   **NO.  15-2173** |

### MEMORANDUM OPINION

This action involves first-party insurance claims by Plaintiffs Carl and Geri McGuckin against their insurer Allstate Fire and Casualty Insurance Company ("Allstate") over insurance coverage for medical expenses Carl McGuckin incurred after an automobile accident.  Carl McGuckin has asserted claims for breach of contract (titled, "First Party Benefits"), bad faith, breach of the covenant of good faith and fair dealing, and violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law.  Carl McGuckin's wife, Geri McGuckin, has asserted claims for breach of contract (titled "First Party Benefits"), bad faith, and breach of contract.  Allstate moves to dismiss Carl McGuckin's claim for violations of the UTPCPL and to dismiss all claims asserted by Geri McGuckin.  For the reasons discussed below, the motion will be granted in part and denied in part.

I.      BACKGROUND

Sometime prior to January 5, 2008, Carl McGuckin met with an Allstate Agent, named Matthew Bean, to discuss the potential purchase of automobile insurance.  Second Amended Complaint ¶ 5 ("Compl.").  Bean recommended that McGuckin purchase Allstate auto insurance and that he purchase additional, extraordinary benefits for an increased premium price.  *Id*.  Bean told McGuckin that the extraordinary medical benefits coverage would pay his or other insureds'

benefits when medical bills resulting from a vehicle accident exceeded $100,000. *Id.* ¶ 6. The Complaint alleges that Bean knew or reasonably should have known that: (1) the representation was false, *id.* ¶ 10; (2) the policy contained a requirement that the medical bills be for "reasonable and necessary" medical treatment of the policyholder's accident related injuries before Allstate would cover the bills, *id.*; and, (3) a determination of whether medical treatments were reasonable and necessary would be made, not by McGuckin's treating physicians, but by a peer review conducted by third parties selected by Allstate. Bean did not inform McGuckin about the "reasonable and necessary" provision of the policy or about how Allstate would make the determination whether medical bills were reasonable and necessary. *Id.* ¶ 14. The McGuckins purchased an extraordinary benefits policy on or about January 5, 2008 and maintained the policy in force through the events at issue in this litigation. *Id.* ¶¶ 13, 17, 29. Geri McGuckin was named as an insured under the policy. *Id.* Ex. A at 5.

While the insurance policy was in force, Carl McGuckin suffered serious injuries in an automobile accident, when his vehicle was struck in the back while stopped in traffic. *Id.* ¶¶ 31-34. The McGuckins sued the driver who struck Carl McGuckin's vehicle and ultimately settled their case with Allstate's consent. *Id.* ¶ 37. The settlement was insufficient, however, to satisfy Carl McGuckin's medical bills. The McGuckins then filed a claim against Allstate for underinsured motorist coverage. *Id.* ¶ 39. Plaintiffs allege that Allstate failed to make a reasonable offer to settle their claim. *Id.* ¶ 40. Ultimately the parties resolved that claim through arbitration. *Id.* ¶ 43. When McGuckin's medical bills exceeded $100,000, he filed claims for coverage under the extraordinary benefits policy. *Id.* ¶ 45. Allstate, at first, paid McGuckin's claims for medical expenses, but declined to pay for later bills. *Id.* ¶ 44. Although Allstate did conduct an independent medical examination of McGuckin in connection with his underinsured

motorist claim, it did not conduct a subsequent examination in connection with its denial of his extraordinary benefits claims or rely upon the prior examination in reaching its decision to deny his claims. *Id*. ¶ 50.  Allstate denied those claims on the grounds that a peer review had concluded that they were not reasonable and necessary. *Id*. ¶ 48.  As the result of Allstate's denial of his claims, Robert McGuckin was "forced to pay deductibles, co-pays, medical bills, and/or to incur liens of medical providers" for treatment of his accident-related injuries. *Id*. ¶ 56.  When Carl McGuckin's financial resources were insufficient to pay those medical expenses, Geri McGuckin paid $1,557 towards those bills. *Id*. ¶¶ 107, 116.  Allstate also declined to pay certain claims for lost earnings. *Id*. ¶ 111.

Carl McGuckin alleges that Allstate violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. § 201-1 *et seq.* (the "UTPCPL"). [1] He alleges numerous acts of misconduct, which he details in forty-eight paragraphs of the Complaint. *Id*. ¶¶ 90 (a)-(vv).  His allegations include that Allstate: misrepresented the contents of its policy, *see, e.g.*, Compl. ¶¶ 90(x)–(z); falsely advertised the coverage its policy would provide, *see*, *e.g.*, *id*. ¶¶ 90 (x)-(z); failed to conduct an adequate investigation of the McGuckins' claims, *see, e.g.*, *id*. ¶¶ 90(d)-(f), (q)-(r); neglected to reevaluate its decision when faced with contrary evidence, *see, e.g.*, *id*. ¶ 90 (q)-(r); relied on an inadequate and incorrect peer review to deny claims, *see, e.g.*, *id*. ¶ 90 (g-h); failed to timely communicate with the McGuckins or to provide them with relevant evidence, *see, e.g.*, *id*. ¶¶ 90(j)-(k), (gg)(2), (6); committed various acts of misconduct in the course of negotiating their dispute, *see, e.g.*, *id*. ¶¶ 90(u) (gg)(8), (10), (hh); and failed to pay

---

[1]  Only Carl McGuckin asserts a UTPCPL claim. Compl. Count IV.

3

claims when Allstate knew or should have known that payment was due.  *See, e.g.*, *id*. ¶¶ 90(a)-(d), (g)-(l), (n)-(p).[2]

## II.   ANALYSIS

### A.   *The Legal Standard*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.*

### B.   *The UTPCPL Claim*

Allstate contends that McGuckin's UTPCPL claim is barred by the economic loss doctrine.  Plaintiff argues that it is not so barred and contends that, even if it were, his claim falls within the fraudulent inducement exception to the doctrine.  Allstate's position is also that, regardless of the economic loss doctrine, the Second Amended Complaint fails to state a claim for violation of the UTPCPL.

#### 1.   Whether The Economic Loss Doctrine Applies to UTPCPL Claims

The economic loss doctrine "'prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract.'"  *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002) (quoting *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995)).  It is "designed to . . . establish clear boundaries between tort and contract law."  *Id.* at 680-81.  The economic loss doctrine holds that "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or

---

[2]   Although paragraphs 21-22 of the Second Amended Complaint allege that Allstate made misrepresentations when it advertised that "you're in good hands with Allstate," McGuckin has withdrawn his reliance on Allstate's advertisements as misrepresentations.  Opp. at 19.

property damage." *Excavation Techs., Inc. v. Columbia Gas Co. of Pa.*, 985 A.3d 840, 841 (Pa. 2009). The doctrine bars claims:

> "(1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract."

*Pesotine*, 2014 WL 4215535, at * 4 (quoting *Reed v. Dupuis*¸ 920 A.2d 861, 864 (Pa. Super. Ct. 2007)).

The issue of whether a doctrine designed to set a boundary between tort and contract claims also applies to statutory claims under the UPTCPL has been the subject of much dispute in Pennsylvania. The Pennsylvania Supreme Court has not ruled on whether the economic loss doctrine applies to bar claims for UTCPL violations that result from purely economic damages. But, in *Werwinski*, the Third Circuit predicted that the Pennsylvania Supreme Court would apply the economic loss doctrine to such claims. 286 F.3d at 681. The Third Circuit's prediction in *Werwinski* has long been subject to criticism. *See, e.g.*, *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 275 (E.D. Pa. 2003); *Smith v. Reinhart*, 68 Pa. D. & C. 4th 432, 437-38 (Pa. Ct. Com. Pl. 2004). In *Knight v. Springfield Hyundai*, the Pennsylvania Superior Court held that UTPCPL claims are not subject to the economic loss doctrine because they are statutory claims that do not sound in negligence. 81 A.3d 940, 951-52 (Pa. Super. Ct. 2013). Courts that have addressed the issue after *Knight* have split. Some courts have held that *Werwinski* no longer is controlling authority and have followed *Knight* in ruling the doctrine inapplicable to claims brought under the UTPCPL. *Roberts v. NVR, Inc.*, No. 15-489, 2015 WL 3745178, at *5 (W.D. Pa. June 15, 2015); *Horne v. Progressive Advanced Ins. Co.*¸ No. 15-1029, 2015 WL 1875970, at *1 n.1 (E.D. Pa. April 24, 2015); *Kantor v. Hico Energy, LLC*, — F. Supp. 3d —, No. 14-5585,

5

2015 WL 1650049, at *3 (E.D. Pa. April 14, 2015). Other courts have held that the *Werwinski's* prediction of the Pennsylvania Supreme Court's ruling on the economic loss doctrine remains binding on the district courts in this circuit until either the Pennsylvania Supreme Court or the Third Circuit rules otherwise. *Vaughan v. State Farm Fire & Cas. Ins. Co.*, No. 14-1684, 2014 WL 6865896, at *4 & n.6 (E.D. Pa. Dec. 3, 2014); *Pesotine* 2014 WL 4215535, at *4 n.1; *Gadley v. Ellis*, No. 13-17, 2014 WL 3696209 at *4-*5 (W.D. Pa. July 23, 2014); *see also Abraham v. Ocwen Loan Servicing, LLC*, No. 14-4977, 2014 WL 5795600, at * 7 n.3 (E.D. Pa. Nov. 7, 2014) (*Werwinski* remains the binding law of the Third Circuit); *Moore v. State Farm Fire & Cas. Co.*, No. 14-3113, 2015 WL 463943, at *2 (E.D. Pa. Feb. 4, 2015) (applying *Werwinski* after *Knight*); Zeglen v. Nw. Mut. Life Ins. Co., No. 14-173, 2014 WL 4215531, at *4 (M.D. Pa. Aug 25, 2014) (same).

   This Court concludes that, when the Third Circuit has predicted how the Pennsylvania Supreme Court will rule on an issue, it is bound by that precedent unless one of those two courts subsequently rules otherwise. *Tubman v. USAA Cas. Ins. Co.*, 943 F. Supp. 2d. 525, 531 (E.D. Pa. 2013); *DeFabo v. Andersen Windows, Inc.*, 654 F. Supp. 2d 285, 294 (E.D. Pa. 2009); *see also Cohen v. Am. Int'l Ins. Co.*, No. 95-5243, 1996 WL 103793, at *3 (E.D. Pa. March 7, 1996) ("The Third Circuit's prediction of how Pennsylvania's highest court will rule carries authority independent of intermediate state court's decisions. In fact, the Third Circuit need not follow these decisions."). Accordingly, McGuckin's UTPCPL claim is barred by the economic loss doctrine claim.

### a. Application of the Economic Loss Doctrine to Claims Regarding Allstate's Performance Under the Policy

The majority of McGuckin's allegations describe failures by Allstate to perform as McGuckin believes it was obligated to do under the parties' contract. Thus, McGuckin's allegations that Allstate: failed to conduct an adequate investigation of their claims, *see, e.g.*, Compl. ¶¶ 90(d)-(f), (q)-(r); neglected to reevaluate its decision when faced with contrary evidence, *see, e.g.*, *id*. ¶ 90 (q)-(r); relied on an inadequate and incorrect peer review to deny claims, *see, e.g.*, *id*. ¶ 90 (g-h); failed to timely communicate with them or to provide them relevant evidence, *see, e.g.*, *id*. ¶ 90(j)-(k), (gg)(2), (6); committed various acts of misconduct in the course of negotiating their dispute, *see, e.g.*, *id*. ¶¶ 90(u) (gg)(8), (10), (hh); and failed to pay claims when Allstate knew or should have known that payment was due, *see, e.g.*, *id*. ¶¶ 90(a)-(d), (g)-(l), (n)-(p), all are addressed to whether and how Allstate performed its duties under the insurance policy. Where "the crux of [the] Plaintiff's allegations . . . is that [the] Defendant has not fulfilled its obligations under the insurance contract," the economic loss doctrine bars recovery for that failure. *Vaughan*, 2014 WL 6865896, at *5. Thus, McGuckin cannot recover under the UTPCPL for such alleged wrongs.

### b. Application of the Economic Loss Doctrine to Claims for Fraud in the Inducement

An exception to the applicability of economic loss doctrine exists for certain claims based on fraud in the inducement where the fraud is "extraneous to the alleged breach of contract, not interwoven with the breach of contract." *Stein v. Fenestra Am., L.L.C.*, No. 09-5038, 2010 WL 816346, at *4 (E.D. Pa. March 9, 2010). Thus, "[i]nducement claims remain viable only when a party makes a representation extraneous to the contract, but not when the representations concern

the subject matter of the contract or the party's performance." *Reilly Foam Corp. v. Rubbermaid Corp.*, 206 F. Supp. 2d 643, 659 (E.D. Pa. 2002).[3]

The misrepresentations that McGuckin alleges here, however, do relate to the subject matter of the insurance contract and Allstate's performance under it. McGuckin alleges that Allstate misrepresented that its policy would pay medical bills he suffered as the result of a vehicle accident that exceeded $100,000. Compl. ¶ 6. He alleges that Allstate failed to disclose to him that its insurance policy contained a "hidden exclusion or requirement that the medical bills must be for 'reasonable and necessary' medical treatment" of the injuries sustained in such an accident. *Id.* ¶ 10. He further alleges that Allstate failed to disclose that the reasonableness and necessity of his treatment would be determined by or on behalf of Allstate, and that Allstate would avoid fulfilling its obligations by "conducting false meritless peer reviews by physicians retained by the Defendant, paid by Defendant and/or known by Defendant to issue peer reviews favorable to Defendant and whom Defendant knew would assert that Plaintiff's medical treatment was unreasonable and unnecessary." *Id*. Allegations that a party did not intend to perform the contract properly "concern the subject matter of the contract of the party's performance" and, thus, do not fit within the limited exception to the economic loss doctrine for fraud in the inducement. *Reilly Foam*, 206 F. Supp. 2d at 659 (quoting *Rich Prod. Corp.*, 66 F. Supp. 2d at 979).

---

[3] The *Werwinski* court cited as an example of a representation that would be extraneous to the contract, a situation in which a company falsely misrepresented its financial condition or the level of its insurance coverage to induce another company to enter into an agreement with it. 286 F.3d at 677. The Third Circuit pointed out that such a misrepresentation might be relevant to a party determining whether to do business with another company, but it would "'not concern the underlying subject matter of the contract or a party's performance thereunder.'" *Id.* (quotation omitted).

### C. *Geri McGuckin's Claims*

Geri McGuckin has pled claims against Allstate for breach of contract and insurance bad faith.  Allstate contends that she lacks standing to bring any of her claims against it because she was not injured in the accident, did not incur her husband's medical bills and did not file a claim for extraordinary medical expenses insurance coverage.  Mot. at 14.  It points to 23 Pa. Cons. Stat. § 4102, which provides:

> In all cases where debts are contracted for necessaries by either spouse for the support and maintenance of the family, it shall be lawful for the creditor in this case to institute suit against the husband and wife for the price of such necessaries and, after obtaining a judgment, have an execution against the spouse contracting the debt alone; and, if no property of that spouse is found, execution may be levied upon and satisfied out of the separate property of the other spouse.

Allstate contends that the statute makes Geri McGuckin's potential liability for her husband's medical bills contingent upon the creditors obtaining judgments and her husband's assets being inadequate to pay the judgments.  Opp. at 14-16.  Geri McGuckin argues in response that the statute makes her ultimately responsible for the payment of her husband's medical expenses.  She points out that she has specifically alleged that she made payments of medical bills and copays in the amount of $1,557 when her husband's financial resources were insufficient to pay for them.  Compl. ¶¶ 107, 116; Opp. at 23-24.  Allstate replies that Geri McGuckin was under no obligation to make those payments and that she did so as a mere volunteer.  Mot. at 16-17.

A volunteer is someone "'who, having no interest to protect, without any legal or moral obligation to pay . . . pays the debt of another.'"  *In re Estate of Devoe*, 74 A.2d 264, 268 (Pa. Super. Ct.  2013) (quoting *Dominski v. Garrett*, 419 A.2d 73, 77 (Pa. Super. Ct. 1980)); *accord Great N. Ins. Co. v. Greenwich Ins. Co.*, No. 05-635, 2008 WL 48354, at *4 (W.D. Pa. May 12, 2008); *Mass. Bonding & Ins. Co. v. Car & Gen. Ins. Corp.*, 152 F. Supp. 477, 482-83 (E.D. Pa.

9

1957).  While it is true that Carl McGuckin's medical providers could not execute on Geri McGuckin's personal assets until after they had obtained judgments and had been unable to satisfy their judgments from her husband's assets, the applicable Pennsylvania statute also states that creditors may sue and obtain a judgment against both Mr. and Mrs. McGuckin.  Pa. 23 Cons. State § 4102.  Thus, it cannot be said that she "has no interest to protect" or that she is "without any legal or moral obligation to pay."  *Estate of Devoe*, 74 A.2d at 268.  Under the threat of a judgment against her, Geri McGuckin alleges that she paid $1,557 in her husband's medical expenses because he lacked sufficient assets to do so.  Whether the evidence will bear out that allegation remains to be seen; however, for the purposes of a motion to dismiss, that allegation is sufficient to establish that she has standing to pursue her claims.[4]

An appropriate Order follows.

**BY THE COURT:**

/s/ Wendy Beetlestone
_____
**WENDY BEETLESTONE, J.**

---

[4] Allstate relies on two cases in which a spouse was held not to have standing to sue for insurance coverage for their spouse's medical expenses, *Ehstakhrian v. Cont'l Gen. Ins. Co.*, No. 06-00218, 2006 U.S. Dist. LEXIS 95607 (E.D. Pa. Dec.) and *Anderson v. Nationwide Ins. Enter.*, 187 F. Supp. 2d 447 (W.D. Pa. 2002). *Estakhrian* was decided on summary judgment, and the court pointed out that Mr. Estakhrian had submitted no evidence that he suffered any injury.  2006 U.S. Dist. LEXIS 95607, at *1, *15 & n.8.  *Anderson* also was decided on summary judgment, and the court also found that the plaintiff had suffered no injury.  187 F. Supp. 2d at 454-55.